92 F.3d 1203
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
CVI/BETA VENTURES, INC., Plaintiff-Appellee,
and
Marchon Eyewear, Inc., Marcolin U.S.A., Inc., and
Rothandberg, Inc., Plaintiffs-Appellees,
v.
CUSTOM OPTICAL FRAMES, INC., Charles Dahan, Nissey Co., Ltd.
and Kanto Special Steel Works, Ltd.,
Defendants-Appellants.
CVI/BETA VENTURES, INC., Plaintiff-Appellee,
and
Marchon Eyewear, Inc., Marcolin U.S.A., Inc., and
Rothandberg, Inc. Plaintiffs-Appellees,
v.
CUSTOM OPTICAL FRAMES INC., Charles Dahan, Nissey Co., Ltd.,
and Kanto Special Steel Works, Ltd., Defendants-Appellants.
 Nos. 96-1070, 95-1486.
 United States Court of Appeals, Federal Circuit.
 June 19, 1996.
 
 Before ARCHER, Chief Judge, NEWMAN, and MICHEL, Circuit Judges.
 DECISION
 ARCHER, Chief Judge.
 
 
 1
 Custom Optical Frames, Inc. et al. (collectively "Custom Optical") appeal the order of the United District Court for the District of Maryland granting a preliminary injunction against Custom Optical in this action brought by CVI/Beta Ventures, Inc. et al. (collectively "CVI/Beta") for infringement of its United States Patent Nos. 4,772,112 (the '112 patent) and 4,896,955 (the '955 patent). Custom Optical separately appeals the district court's denial of its request to increase the amount of the injunction bond. We granted a stay of the injunction and consolidated these appeals for purposes of oral argument and disposition. We affirm both the grant of the preliminary injunction and the district court's refusal to increase the bond amount.
 
 DISCUSSION
 
 2
 The '112 and '955 patents[1] pertain to eyeglass frames made from nickel-titanium based shape-memory alloy which are resistant to permanent deformation. For purposes of the preliminary injunction and this appeal, only claim 1 of the '955 patent is at issue. Claim 1 is as follows:
 
 
 3
 An eyeglass frame having at least a portion thereof fabricated from nickel-titanium based shape-memory alloy, said portion being in the work-hardened pseudoelastic metallurgical state, said portion having been subjected to work-hardening and having a low effective elastic modulus giving a soft, springy feel, said portion having greater than 3% elasticity over a temperature range from -20? C to +40? C.
 
 
 4
 After considering the requisite factors, i.e., the reasonable likelihood of success on the merits, irreparable harm, the balance of the hardships, and the impact on the public interest, Hybritech, Inc. v. Abbott Labs., 849 F.2d 1446, 1451, 7 USPQ2d 1191, 1195 (Fed.Cir.1988), the district court determined that preliminary injunctive relief was warranted. Relevant for purposes of this appeal is the district court's determination that CVI/Beta showed a reasonable likelihood of success of proving infringement and, more specifically, its interpretation of two claim limitations favorable to CVI/Beta.
 
 
 5
 The district court looked at the limitation "said portion being in the work-hardened pseudoelastic metallurgical state," and determined that claim 1 was not limited to frames that are work-hardened while in the pseudoelastic metallurgical state. In addition, the district court interpreted the limitation requiring "greater than 3% elasticity" to mean that within the claimed temperature range the frame portion will recover at least 3% of its original shape after being subject to strain, rather than meaning that it must show complete recovery after a strain of greater than 3%. The district court enjoined Custom Optical from further infringing the '955 patent and required CVI/Beta to post a bond in the amount of $500,000.
 
 
 6
 The decision to grant a preliminary injunction is within the discretion of the district court, and, as a result, we review that decision for an abuse of discretion. Novo Nordisk of N. America, Inc. v. Genentech, Inc., 77 F.3d 1364, 1367, 37 USPQ2d 1773, 1775 (Fed.Cir.1996). "An abuse of discretion may be established by showing that the court made a clear error of judgment in weighing relevant factors or exercised its discretion based upon an error of law or clearly erroneous factual findings." Id., 37 USPQ2d at 1775; Joy Technologies, Inc. v. Flakt, Inc., 6 F.3d 770, 772, 28 USPQ2d 1378, 1380 (Fed.Cir.1993).
 
 
 7
 Custom Optical argues that the phrase "work-hardened pseudoelastic metallurgical state" limits claim 1 to frames which are pseudoelastic while they are work-hardened. In support, it cites statements made during the prosecution of the applications resulting in the '955 and '112 patents. Particularly, Custom Optical asserts that, as a result of CVI/Beta's statement that claim 1 recites "limitations which are proper to use in an article that is defined by process of manufacture," claim 1 is limited to a product by process.
 
 
 8
 After considering all of Custom Optical's arguments, we conclude that Custom Optical has not established that the district court erred in construing claim 1 as not necessarily being limited to work-hardening in the pseudoelastic state. By its own terms, "in the work-hardened psuedoelastic metallurgic state" describes a state, not a process. In contrast, the very next limitation in claim 1, "said portion having been subject to work-hardening," describes a process. Thus, claim 1 does recite a process component, and CVI/Beta's statement during prosecution is not inconsistent with the district court's interpretation. Moreover, interpreting "work-hardened pseudoelastic metallurgic state" as a process limitation appears to make this later process limitation redundant. Thus, Custom Optical has failed to show that during prosecution CVI/Beta converted this state of matter limitation into another process limitation.
 
 
 9
 As to the 3% elasticity requirement, Custom Optical asserts that this limitation only covers frames which completely recover from a strain of 3%. It cites a dictionary definition stating that elastic behavior is the recovery of the original dimensions of a deformed body when the load is removed and argues that claim 1 is directed to the embodiment shown in Figures 2F and 2H depicting optimized elasticity or complete recovery. These figures, however, are described in the specification as representing ideal characteristics. Nowhere in the specification, claims, or prosecution history, however, does CVI/Beta indicate that it was limiting the claim to complete recovery. To the contrary, where the phrase "elasticity" is used, it is not in the context of complete recovery. For example, in connection with another embodiment, shown in Figure 2G, it is clear that 3% elasticity does not mean complete recovery. In that embodiment the remaining deformation is recovered through heat. Custom Optical has failed to show that this term means different things when referring to different embodiments.
 
 
 10
 Accordingly, we cannot conclude in the context of the preliminary injunction proceedings that the district court erred in rejecting Custom Optical's proffered claim interpretation. Custom Optical has failed to show that its claim interpretation is correct as a matter of law. Because the evidence before the district court shows that the accused frames are work-hardened and pseudoelastic and recovered at least 3% of their original shape when strained, the district court's conclusion that CVI/Beta was reasonably likely to succeed in showing infringement was not based on an error of law or clearly erroneous factual findings. In addition, we have considered Custom Optical's remaining arguments, and find them insufficient to show that the district court abused its discretion. As this court noted in PPG Indus. v. Guardian Indus., 75 F.3d 1558, 1567, 37 USPQ2d 1618, 1626 (Fed.Cir.1996), Custom Optical "will have an opportunity at the merits stage to present and expand upon the arguments it has made at the preliminary injunction stage, as well as any additional arguments that it chooses to present, and the district court will be able to give those arguments plenary consideration at that time."
 
 
 11
 Finally, we consider Custom Optical's challenge to the amount of the injunction bond. Under Rule 65(c) of the Federal Rules of Civil Procedure, upon the issuance of a preliminary injunction, the court is required to obtain security "in such sum as the court deems proper, for payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained." The district court determined based on the facts before it, including the fact that Custom Optical's claimed damages were either speculative and remote or grossly overstated, that an injunction bond in the amount of $500,000 would be proper. Custom Optical has failed to show that this determination amounts to an abuse of discretion.
 
 
 12
 In view of the above, this court's order dated November 29, 1995 granting Custom Optical's motion for a stay, pending appeal, of the preliminary injunction issued by the district court is vacated and the preliminary injunction against Custom Optical is reinstated effective on the date of this opinion.
 
 
 
 [1]
 The application for the '955 patent was a continuation-in-part of the application for the '112 patent